IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KATRINA BACHIM,

           Plaintiff,

   v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

           Defendant.

OPINION AND ORDER

16-cv-0856-slc

---

      This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g). On July 27, 2015, an administrative law judge issued a decision finding that plaintiff Katrina Bachim was not disabled at any time between February 15, 2010 and March 31, 2015 and therefore was not entitled to a period of disability or disability insurance benefits under Section II of the Social Security Act. That decision eventually became the final decision of the commissioner when the Appeals Council denied plaintiff's request for review. Plaintiff now seeks a remand pursuant to sentence four of 42 U.S.C. § 405(g). She contends that the ALJ committed two errors: (1) his credibility determination failed to account for all of plaintiff's impairments and resulting limitations; and (2) he failed to afford appropriate weight to the opinion of an advanced nurse practitioner, who endorsed disabling limitations. Having reviewed the ALJ's decision, the parties' briefs and the record, I am rejecting plaintiff's arguments and affirming the ALJ's decision.

BACKGROUND

      Plaintiff was born on January 5, 1984, making her 31 years old on the date of the ALJ's decision. She has a high school education, having earned her GED after dropping out of high

school her senior year. She has worked as a cashier, a waitress and a dietary aide, but has not worked since 2010 except for selling Avon products for a while in 2014. She was married in 2010 and had three children between 2011 and 2013. At the time of the hearing in July 2015, she was in the process of divorcing her husband and was living on her own with primary custody of her three children. She also has an 11-year old son from a prior relationship who lives with her on alternating weekends.

Plaintiff has a long history of low back pain that she attributes to a fall from a horse in 2007. AR 543. Lumbar x-rays ordered in May 2012 showed only mild degenerative changes in the spine, however, and a lumbar MRI was normal. Plaintiff also suffers from depression, anxiety, all-over body pain, migraines and fatigue. In September 2012, she was diagnosed with fibromyalgia. AR 669. She has been diagnosed with major depressive disorder, recurrent, generalized anxiety disorder, and post-traumatic stress disorder stemming from incidents of childhood sexual abuse. In addition, plaintiff is obese: her weight of 200 pounds on a 5'1" frame results in a Body Mass Index of about 38, which corresponds to Level II obesity under the social security rulings. SSR 02-1p.

Plaintiff has seen various health providers at various clinics for these conditions. Treatment mostly has consisted of medications to help manage her pain, depression and anxiety. She has also been advised by various providers to participate in a regular exercise program and psychotherapy. In November 2012, plaintiff was referred to Kathryn Baker, Ph.D., a pain psychologist, who opined that plaintiff had a long-standing mood disorder that was complicating her pain management and that plaintiff was unlikely to experience significant improvement until

2

she got her mood under control. AR 687. Baker referred plaintiff to behavioral health but plaintiff did not pursue counseling at that time.

Plaintiff's compliance with her doctor's recommendations has been inconsistent: plaintiff often discontinued medications because she thought they were ineffective or because she was pregnant; she did not follow through with exercise because she said it made her feel worse; and it appears that she never engaged in a regular psychotherapy program. She did, however, attend physical therapy and visit a chiropractor for her back pain, but she experienced little improvement.

Plaintiff applied for Title II social security benefits on October 19, 2012, alleging that she had been disabled since February 15, 2010 as a result of fibromyalgia, depression, anxiety, migraines and back pain. As part of the state disability agency's initial review of her application, she had a consultative psychological examination with Steven Benish, Ph.D., on February 13, 2013. AR 692-694. Benish noted that plaintiff's primary complaints were chronic pain and migraines. Plaintiff reported that it would be difficult to live independently, but she was able to cook, clean, self-care and bathe. She said she avoided grocery shopping but she did not elaborate. She reported being good friends with her sister but denied having friends, belonging to a church or any groups in which socialization normally takes place. Plaintiff lived with her husband and 2 children and described her quality of life as "good." Benish diagnosed plaintiff with a mood disorder and panic with agoraphobia. He opined that her prognosis for her mental impairments was good if she got appropriate treatment, noting that she had not worked with a psychologist. In Benish's opinion, plaintiff would be able to understand and remember simple

and complex instructions, handle workplace stress and adapt to change, although she might become irritable with coworkers or supervisors.

Reviewing plaintiff's application at the initial level, medical consultants reviewed plaintiff's medical records and offered opinions concerning her impairments and their severity. On March 1, 2013, Esther Lefevre, Ph.D, determined that plaintiff had the medically determinable impairments of a mood disorder and a panic disorder, but concluded that these impairments imposed only mild difficulties in maintaining social functioning and therefore were not severe. AR 84. That same day, Mina Khorshidi, M.D., determined that plaintiff was capable of meeting the demands of light work (lifting 20 pounds occasionally, 10 pounds frequently and sitting or standing for up to 6 hours in an eight-hour workday), but should only occasionally climb ladders, ropes or scaffolds. These findings were largely affirmed at the reconsideration level, with David Biscardi, Ph.D., indicating that plaintiff had no more than mild mental limitations and Diane Manos, M.D., affirming the prior physical residual functional capacity assessment. AR 90-104.

After her application was denied at the reconsideration level, plaintiff requested an administrative hearing, which was held on May 19, 2015. The ALJ heard testimony from plaintiff, who was represented by counsel, and a vocational expert. Plaintiff testified that she was separated from her husband and was living with her three children, aged four, three and one; her 11-year-old stayed with her at times also. She testified that she suffers from daily migraines for which medication did not seem to help and gets only four-six hours of sleep every night. Being around other people causes anxiety as does "certain noises, certain smells," and she gets panic attacks. AR 28. Plaintiff said she had post-partum depression after the birth of her last

child and that she was still depressed. She got help 2-3 times a week with child care and cleaning from her neighbor, husband, mom or sister. Plaintiff testified that she was unable to do chores such as vacuuming and mopping and can't lift more than 20 pounds, including her children. Plaintiff testified that she would not be able to be gainfully employed because she would not be reliable and is limited in her ability to walk, lift or sit. Plaintiff estimated that she could sit for 10 minutes and walk about 25 feet without needing a break. AR 34.

Plaintiff did not produce any opinions from any of her treating or examining physicians that suggested greater limitations than those found by the state agency physicians. However, she submitted a Fibromyalgia Questionnaire completed by Cindi Griffin, an Advanced Practice Nurse Practitioner at the Gundersen Muscoda Clinic, that was dated May 18, 2015. AR 805-810. On the form, Griffin indicated that plaintiff had been seen monthly for three months for medical reasons, that plaintiff met the American Rheumatological criteria for fibromyalgia and that she also suffered from post traumatic stress disorder, migraines, myofascial pain and chronic back pain. Griffin opined that plaintiff had chronic, ongoing pain that would frequently interfere with her ability to concentrate and severely limit her ability to deal with work stress. She further indicated that plaintiff was very limited in her ability to lift, sit, stand, walk or use her upper extremities and was likely to be absent from work more than three times a month. In response to the question asking "What is the earliest date that the description of symptoms *and limitations* in this questionnaire applies?," Griffin answered, "2004." AR 809 (emphasis in original).

## ALJ'S DECISION

The ALJ issued a decision denying plaintiff's application on July 27, 2015. Evaluating plaintiff's claim in accordance with the five-step process set out by the Social Security regulations, 20 C.F.R. § 404.1520(a), the ALJ made the following findings: plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of February 15, 2010 through her date last insured of March 31, 2015 (step one); she had the severe impairments of fibromaylgia, degenerative disc disease, obesity and anxiety disorder (step two); none of the impairments singly or combined were equal in severity to any impairment that the Commissioner considers to be severe enough to prevent a person from doing any gainful activity (step three); plaintiff was unable to return to any of her past relevant work as a bartender, diet clerk, server, front desk clerk, file clerk or salesperson (step four); and plaintiff could nonetheless make a vocational adjustment to a significant number of jobs existing in the Wisconsin economy, such as housekeeper (7,300 jobs), usher/ticket taker (1,200 jobs) and stock clerk (4,300).

As a predicate to his conclusions at steps four and five, the ALJ assessed plaintiff's residual functional capacity, which is the commissioner's term for what a person can do both physically and mentally on a sustained basis in spite of limitations caused by her impairments. 20 C.F.R. §§ 404.1520(3); 404.1545. At this step, the ALJ concluded that plaintiff retained the residual functional capacity to perform a modified level of light work. Specifically, he found that plaintiff was able to perform light work (which is defined as lifting or carrying up to 20 pounds occasionally and 10 pounds frequently, standing or walking for at least four hours of an 8-hour day and sitting for 6 hours a day) but was precluded from climbing ropes, ladders, or scaffolding, performing more than occasional stooping, bending, crouching, kneeling, crawling, or ramp or

6

stair climbing, and having more than occasional interactions with co-workers, the general public and supervisors. In addition, he found that plaintiff was limited to performing simple, routine tasks in a job with no work involving fast-paced production.

In reaching his conclusions about plaintiff's residual functional capacity, the ALJ gave great weight to the opinions of the non-examining state agency physicians who reviewed plaintiff's medical record and concluded that she could perform light work with moderate mental limitations, and to Benish's similar opinion regarding plaintiff's mental abilities. In addition, the ALJ found that plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms were not fully credible because they were inconsistent with the objective medical evidence and other evidence in the record. In support of this finding, the ALJ cited various pieces of evidence that contradicted plaintiff's complaints of extreme, debilitating pain:

- plaintiff did not always complain of such disabling symptoms to her doctors and walked with a normal gait even when she did report being in pain;

- when plaintiff did complain of worsening symptoms, it generally corresponded with her pregnancies, C-sections, recovery from childbirth or other incident unrelated to her impairments;

- plaintiff failed in several instances to follow up on treatment recommendations made by her treating doctors;

- plaintiff was informed that her mood and behavioral choices complicated her pain, yet she declined to pursue psychotropic medications;

- even when plaintiff was not on medication, her mental status examinations were generally unremarkable;

- when plaintiff did eventually try psychotropic medications in December 2013, she had significant improvement with no side effects, yet plaintiff failed to show up for further appointments;

- plaintiff's responses on psychological testing suggested that she was engaging in non-credible reporting or misrepresentation;

- plaintiff provided inconsistent information regarding her cigarette use, auditory and visual hallucinations, ability to leave the house alone and daily activities;

- plaintiff reported during various medical visits that she had the ability to cook, clean and complete her own self-care and care for her children without particular difficulty;

- plaintiff engaged in work activity after her alleged onset date (selling Avon products), which indicated that her daily activities and abilities at times were greater than reported; and

- evidence in the record suggested that plaintiff stopped working when she got married and became pregnant, and not because of any worsening in her condition.

The ALJ placed very little weight on the May 2015 treating opinion from Cindi Griffin, APNP, explaining:

> This is not an acceptable medical source and her opinion is quite inconsistent with the claimant's own activities and record. Ms. Griffin opined that *since 2004* the claimant has been unable to walk more than 2 blocks, sit more than 1 hour, stand more than 15 minutes at a time; lift more than 20 pounds occasionally; sustain even 6 hours of sitting/standing/walking in a day; use her upper extremities more than 25% of the day; bend or twist more than 5% of the working day; and sustain tasks without unscheduled breaks or more than 3 absences a month. Yet, *since 2004*, the claimant sustained *years* of work requiring much more demanding physical exertion and without absences. Moreover, as described earlier, the medical record consistently shows that she can walk with a normal gait, is able to sustain childcare, and can maintain her household. The record also lacks the objective abnormalities in her examinations and the kind of treatment that would support such severe restrictions. Given these inconsistencies, the opinion is not persuasive.

OPINION

Plaintiff challenges only the ALJ's RFC formulation. Specifically, she contends that the ALJ committed two errors that led him to underrepresent the severity of her fibromyalgia and mental impairments when determining her RFC. First, she contends that the ALJ erroneously found that her testimony concerning the severity of her conditions and related symptoms was not credible. Second, she contends that the ALJ did not properly evaluate the opinion of Griffin, the nurse practitioner.

A federal court reviews an administrative law judge's decision deferentially and will uphold the denial of benefits unless it is not supported by substantial evidence or is based on an error of law. 42 U.S.C. § 405(g); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). ALJ credibility determinations are given deference because ALJs are in a special position to hear, see, and assess witnesses. *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012). Therefore, a federal court will overturn the ALJ's credibility determination only if it is patently wrong, meaning that it is lacking any explanation or support. *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008) ("It is only when the ALJ's determination lacks any explanation or support that we will declare it to be 'patently wrong' and deserving of reversal.") (internal quotations and citations omitted). In drawing her conclusions, the ALJ must "explain her decision in such a way that allows us to determine whether she reached her decision in a rational

9

manner, logically based on her specific findings and the evidence in the record." *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011). Ultimately, "where conflicting evidence allows reasonable minds to differ about whether a claimant is disabled, the responsibility for that decision falls on the commissioner, or the commissioner's designate, the [administrative law judge]." *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987) (citation omitted).

## II. Plaintiff's Credibility

Plaintiff first challenges the ALJ's determination that her testimony regarding the severity of her fibromyalgia and mental impairments was not fully credible. Plaintiff argues that the ALJ primarily "rejected the severity of Bachim's reports of pain because of a lack of supporting objective evidence," and suggests that by doing so, the ALJ failed to account for the fact that plaintiff has been diagnosed with fibromyalgia, an impairment for which there is no objective evidence apart from tenderness in 18 fixed locations in the body. Plt.'s Br. in Supp., dkt. 10, at 25-27; *see generally Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir. 1996) (discussing features of fibromyalgia and criticizing ALJ for her "pervasive misunderstanding of the disease"). As the court of appeals pointed out in *Sarchet*, however, the mere fact that a person has been diagnosed with fibromyalgia does not mean that an ALJ must find that person disabled. 78 F. 3d at 307 ("Some people may have such a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the question is whether Sarchet is one of the minority.")(internal citations omitted).

10

Here, contrary to plaintiff's contention, the ALJ did *not* reject plaintiff's subjective complaints merely because of a lack of objective medical evidence to back them up. Instead, the ALJ conducted a thorough review of all of the evidence in the record and noted a number of inconsistencies that suggested to him that plaintiff was overstating the severity of her symptoms. These inconsistencies, detailed above, included plaintiff's own inconsistent reports, her failure to follow through with prescribed treatment, her ability to perform some part time work, and the timing of her alleged onset of disability. The ALJ cited to evidence in the record in support of each of these findings. Plaintiff does not argue that the ALJ misstated the record or that he ignored other important evidence that suggested a different conclusion. Indeed, plaintiff fails to make any specific challenge to any of the ALJ's reasons for finding plaintiff not credible. Her sole attack on the ALJ's assessment of her physical limitations is to insist that the ALJ did not "take into consideration the nature of fibromyalgia," but this criticism is unfounded. Accordingly, this argument fails.

Next, plaintiff argues that the ALJ oversimplified her mental condition. As she points out, she has seen various mental health providers who have diagnosed her with a variety of impairments, including depression, anxiety/panic, mood disorder, agoraphobia, affective disorder, post-traumatic stress disorder and a personality disorder. In his decision, the ALJ acknowledged that plaintiff "has been treated for a number of mental disorders that have been variably diagnosed." AR 16. He found, however, that "it appears the common thread of her mental complaints is anxiety," and that "[h]er affective disorder has been secondary without symptoms that would suggest a severe impairment." AR 16. Plaintiff argues that the ALJ should have found plaintiff to have other "severe" mental impairments besides anxiety, and further, that the ALJ

should at least have taken all of plaintiff's mental impairments into account when evaluating her credibility. Plt.'s Br. in Supp., dkt 10, at 29.

The problem with plaintiff's argument is that she does not point to any specific evidence in the record that suggests that, whether severe or not or whether properly identified or not, her mental impairments posed more significant limitations than those found by the ALJ. In his residual functional capacity assessment, the ALJ accounted for plaintiff's mental impairment by finding that plaintiff was limited to occasional interactions with co-workers, the general public and supervisors and to performing simple, routine tasks in a job with no work involving fast-paced production. Plaintiff does not point to any evidence in the record that supports more extreme mental limitations. For example, none of the various mental health professionals that plaintiff has seen have suggested that plaintiff's mental impairments are disabling or offered any assessment of her mental abilities. To the contrary, mental status examinations were largely normal, and in February 2015 plaintiff denied having mood swings or memory/cognitive disturbance and declined any psychotropic medications. The consultative mental examiner, Steven Benish, found that plaintiff would be able to understand and remember simple and complex instructions, that workplace stressors would not be debilitating, that plaintiff's social functioning was not significantly impaired and that her ability to adapt to change appeared to be intact. Similarly, the state agency consultants found that plaintiff had at most moderate mental limitations.

Although the ALJ explained that he was giving great weight to these opinions, he ultimately went on to assign plaintiff a rather restrictive residual functional capacity by limiting her to only occasional contact with the public, coworkers and supervisors and to simple, routine

tasks in a job with no work involving fast-paced production. Thus, the ALJ did not ignore plaintiff's mental impairments but generously accommodated them in the residual functional capacity assessment. Even though the ALJ could have done a better job identifying the nature of plaintiff's mental impairments, plaintiff has failed to show how more precision would have affected the ALJ's ultimate determination that she was not disabled.

### III. Griffin's Opinion

Plaintiff contends that the ALJ erred in rejecting the report from Cindi Griffin, APNP, who found that plaintiff had severe limitations that would preclude competitive employment. The ALJ considered Grifin's report but rejected it, citing three reasons: (1) Griffin was not an "acceptable medical source;" (2) Griffin's opinion of severe limitations that had been present since 2004 was inconsistent with plaintiff's own activities; and (3) Griffin's opinion was inconsistent with the medical record and plaintiff's course of treatment.

At the time the ALJ issued his decision, "acceptable medical source" was a term of art in Social Security law. Under 20 C.F.R. § 404.1513 and Social Security Ruling SSR 06-03p, only "acceptable medical sources" could provide evidence to establish the existence of a medically determinable impairment and provide medical opinions. As plaintiff concedes, nurse practitioners were not considered "acceptable medical sources." *Id*.[1] Thus, the ALJ did not err in pointing out that Griffin was not an "acceptable medical source."

---

[1] The agency rescinded SSR 06-03 effective March 27, 2017. Further, 20 C.F.R. § 404.1513 no longer refers to "acceptable medical sources," but only "medical sources."

Nonetheless, plaintiff argues that the ALJ failed to comply with SSR 06–03p, which instructed that evidence from "other sources" such as nurse practitioners could be considered to "show the severity of the individual's impairment(s) and how it affects the individual's ability to function." The ruling explained that "[o]pinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id*. Finally, the ruling advised that in considering opinions from other medical sources, ALJs were to apply the same factors used to evaluate opinions from acceptable medical sources, including how long the source has known and how frequently the source has seen the individual, how consistent the opinion is with other evidence, the degree to which the source presents relevant evidence to support an opinion, how well the source explains the opinion, whether the source has a specialty or area of expertise related to the individual's impairment and any other factors that tend to support or refute the opinion. SSR 06-03p.

Plaintiff argues that "[n]othing in the decision indicates that the ALJ consider[*ed*] these factors in weighing APNP Griffin's report. The ALJ provided no indication that he considered the length of treatment, the evidence supporting her opinion or the basis for her findings." Br. in Supp., dkt. 10, at 14. I disagree. After noting that Griffin was not an acceptable medical source, the ALJ nonetheless proceeded to explain that he was rejecting her opinion because it was inconsistent with plaintiff's activities and the medical record, which showed largely normal examinations and conservative treatment. It is true that the ALJ did not discuss specifically the length of treatment, but this evidence actually hurts plaintiff: there are no records that Griffin ever examined or saw plaintiff at any time other than the day she completed the residual

functional capacity form. Likewise, had the ALJ discussed the basis of Griffin's findings, it would not have made a difference: Griffin did not explain what findings supported her opinion, nor did she attach any treatment notes that might have helped to answer that question.

The ALJ pointed out that Griffin had opined that the limitations she endorsed on the highly restrictive Residual Functional Capacity assessment form applied to plaintiff beginning in 2004. As the ALJ pointed out, however, this undermined the credibility of Griffin's opinion because plaintiff had been employed at jobs far exceeding that residual functional capacity from 2004 until 2010. Plaintiff argues that the more reasonable inference was that Griffin wrote "2004" simply because that was when plaintiff began having back pain and that Griffin did not mean to suggest that all the limitations she endorsed on the form had been present since that time. However, the question asked on the form was "What is the earliest date that the description of symptoms *and limitations* in this questionnaire applies?" with the words "and limitations" italicized. Given the form's clarity, it was not unreasonable for the ALJ to assume that Griffin meant what she said and that she was offering an opinion that plaintiff had been disabled even six years before she stopped working.

In addition to this patent inconsistency, the ALJ pointed out that plaintiff was able to walk with a normal gait, sustain childcare and maintain her household, which indicated a higher level of functioning than endorsed by Griffin. He also pointed to the treatment record, which showed few objective abnormalities or intensive treatment that would have supported such severe restrictions. Thus, contrary to plaintiff's argument, the ALJ did not merely provide a "blanket rejection" of Griffin's opinion, but cited reasons, supported by the evidence in the record, why

15

he was giving it little weight. That being so, this court has no basis to overturn that aspect of the ALJ's decision.

ORDER

IT IS ORDERED that the decision of the Commissioner of Social Security denying plaintiff Katrina Bachim's application for a period of disability and disability insurance benefits under the Social Security Act is AFFIRMED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 20th day of October, 2017.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge